## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 30 2020, 11:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Justin S. Counceller,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 30, 2020

Court of Appeals Case No.
19A-CR-2150

Appeal from the
Madison Circuit Court

The Honorable
Angela G. Warner Sims, Judge

Trial Court Cause No.
48C01-1604-F6-783

**Altice, Judge.**

# Case Summary

[1] After pleading guilty to Level 6 felony fraud, Justin Counceller began serving his sentence in the county's community corrections Continuum of Sanctions Program (the Program). Counceller was alleged to have violated the rules of the Program on a number of occasions. Following a hearing, the trial court found that Counceller violated the rules of his placement and ordered that he serve the remainder of his sentence in the Indiana Department of Correction (DOC). Counceller argues that (1) the trial court abused its discretion when it admitted the testimony of a case manager with the Program, and (2) the trial court's finding of a violation was not supported by the evidence.

[2] We affirm.

# Facts & Procedural History

[3] In January 2016, Counceller made purchases with a credit card belonging to a deceased man, whom Counceller had known. At some point, Counceller was identified and arrested, and on April 15, 2016, the State charged him with Level 6 felony fraud. On January 10, 2017, Counceller entered into a plea agreement which left open the total length of the sentence but capped the executed portion at eighteen months. On March 27, 2017, the trial court sentenced Counceller to 910 days, 545 executed and 365 days suspended to probation, with Counceller serving the executed portion of his sentence in the Program. On March 28, Counceller reported to the Madison County Community Justice Center (CJC) for intake into the Program's adult day reporting program. That date,

Counceller submitted to a urine screen and tested positive for methamphetamine, THC, and Suboxone. The Program's Board voted to place Counceller into the home detention program and gave him thirty days to complete the home detention intake requirements, and directed that, until then, he continue to report to adult day reporting.

[4] A month later, on April 28, an adult day reporting case manager for the Program filed a petition to terminate Counceller's participation in the Program for five alleged violations, including Counceller's admitted use of marijuana, suboxone, and methamphetamine. The Program also alleged that Counceller resisted correctional officers, failed to obtain employment and substance abuse evaluations, and failed to meet financial obligations of the Program. On May 22, following a hearing, the trial court issued a sanctions order, finding that Counceller violated the terms of his placement in the Program. The trial court revoked Counceller's placement and suspended sentence and ordered him to serve his sentence in the DOC. However, the court suspended those sanctions pending successful completion of Drug Court, for which Counceller was later found to be ineligible. On July 31, pursuant to the agreement of the parties, the trial court ordered Counceller to serve his remaining sentence on work release through the Program.

[5] On October 4, 2017, a case manager with the Program filed a petition to terminate Counceller's participation in the Program for his failure to schedule his work release intake, failure to report, and committing a new criminal offense of misdemeanor resisting law enforcement. The trial court issued a

warrant for Counceller's arrest, and after an October 30 hearing, the trial court issued a sanctions order, determining that Counceller had violated conditions of the Program. Pursuant to an agreement of the parties, the trial court imposed 62 days in the Madison County Detention Center, less accrued days and earned credit time, "resulting in time served." *Appellant's Appendix Vol. II* at 105. The trial court ordered Counceller to return to the Program.

[6] On June 27, 2019, Counceller was placed in the work release facility as part of his community corrections sentence.[1] On July 2, 2019, the Program Coordinator filed a Notice of COS Termination with the court, asking that Counceller's placement in the Program be terminated because (1) on June 27 at 11:45 a.m. Counceller was released from the Program facility for medical care but failed to return, and (2) he committed a new offense, namely Level 6 felony failure to return (later filed as Cause F6-1708).

[7] The trial court issued a warrant for Counceller's arrest, which was served on July 28, 2019. Counceller appeared for an initial hearing on the notice of termination, and the court set an evidentiary hearing for Aug 19. In addition, the trial court issued "its standard order of discovery," which required the State to file with the court "any . . . documents . . . [that] the prosecuting attorney

---

[1] The record does not explain the lapse in time from late 2017 to Counceller's placement at the work release facility in June 2019.

intends to use in the hearing[.]" *Id.* at 15, 75. The Program, through the CJC, timely filed discovery with the court on August 12.

[8] On August 19, 2019, the trial court jointly held an evidentiary hearing on the alleged violation and a status conference in Cause F6-1708. As evidence of Counceller's alleged violation, the State presented testimony from Brandy Poffenbarger, a case manager with the Program. Poffenbarger testified that she had not met Counceller and was representing another case manager at the hearing. When Counceller objected based on Poffenbarger's lack of personal knowledge, she testified that the Program keeps a file on every person in the Program and her knowledge was based on the contents of Counceller's file. Counceller objected, arguing, "They haven't really established . . . that these record [sic] are kept in the normal course of business, only that they are records that this lady, who has never met my client, says . . .they keep on each client . . . [s]o I think there's a foundational problem." *Transcript* at 13-14. The trial court overruled the objection, and Poffenbarger testified that Counceller was placed in the work release facility on June 27 and that he "absconded" on the same day when he left with permission for medical treatment and "never returned." *Id.* at 14. Following cross-examination, the State asked the trial court to take judicial notice of the Program's filing of discovery on August 12. The court granted the request without objection from Counceller.

[9] On August 19, 2019, the trial court issued a sanctions order, determining that Counceller had violated the terms of the Program as follows:

> 1. On 6/27/19, Defendant was released for medical care and failed to return to work release [];
>
> 2. Defendant failed to behave well in society, to wit: on 6/28/19, Defendant committed a new criminal offense under [F6-1708] [].

*Appellant's Appendix Vol. II* at 17. The court ordered Counceller to serve the remainder of his sentence in the DOC. He now appeals.

# Discussion & Decision

## I. Admission of Evidence

[10] Counceller argues that the trial court abused its discretion when it allowed Poffenbarger to testify even though she had no personal knowledge of Counceller or his participation in the Program. Generally, the admission of evidence is within the trial court's discretion, and its decisions are only reviewed for an abuse of that discretion. *Holmes v. State*, 923 N.E.2d 479, 483 (Ind. Ct. App. 2010). An abuse of discretion occurs if a decision is clearly against the logic and effects of the facts and circumstances before the court or if the court has misinterpreted the law. *Id.*

[11] It is well established that, while a community corrections placement revocation hearing has certain due process requirements, it is not to be equated with an adversarial criminal proceeding. *Monroe v. State*, 899 N.E.2d 688, 691 (Ind. Ct. App. 2009). Rather, its procedures are to be more flexible. *Id.* We have explained:

> [T]he Indiana Rules of Evidence in general and the rules against hearsay in particular do not apply in community corrections placement revocation hearings. *See* Ind. Evidence Rule 101(c) (providing that the rules do not apply in proceedings relating to sentencing, probation, or parole). *In probation and community corrections placement revocation hearings, therefore, judges may consider any relevant evidence bearing some substantial indicia of reliability*. This includes reliable hearsay. The absence of strict evidentiary rules places particular importance on the fact-finding role of judges in assessing the weight, sufficiency and reliability of proffered evidence.

*Id*. (some internal citations omitted) (emphasis added). Courts may admit evidence during the hearing that would not be permitted in a full-blown criminal trial. *Reyes v. State*, 868 N.E.2d 438, 442 (Ind. 2007). This includes "letters, affidavits, and other material" that would generally not be admissible. *Id*.

[12] As our Supreme Court recognized, there are sound policy justifications for such flexibility. *Smith v. State*, 971 N.E.2d 86, 91 (Ind. 2012). Alternative sentencing such as community corrections serves the humane purposes of avoiding incarceration and permitting the offender to meet the offender's financial obligations, "'but for sentencing alternatives to be viable options for Indiana judges, judges must have the ability to move with alacrity to protect public safety when adjudicated offenders violate the conditions of their sentences.'" *Id*. (quoting *Cox v. State*, 706 N.E.2d 547, 550 (Ind. 1999)). Stated differently, "'obstacles to revoking an alternative sentence may diminish the likelihood of community corrections placements being made in the first place.'" *Id*.

[13] Here, Counceller acknowledges that the Ind. Rules of Evidence do not apply in community corrections revocation proceedings but asserts that "the hearsay evidence . . . did not have substantial guarantee of trustworthiness" and should not have been admitted. *Appellant's Brief* at 8. We disagree.

[14] Here, to establish that Counceller violated the terms of his placement, the State called Poffenbarger, a representative of the Program, to testify. Poffenbarger testified that she was a case worker with the Program, had worked at the Madison County CJC in the Program for five years, and was testifying on behalf of another case worker. Counceller objected to Poffenbarger's lack of personal knowledge and to the fact that she was testifying from documents. The trial court asked for "a foundation" and Poffenbarger testified, "we keep a file on" each person in the Program and that it was from those records that she was testifying. *Transcript* at 13. The trial court overruled Counceller's objection and permitted Poffenbarger to testify to the facts recorded in Counceller's file surrounding his alleged violation of leaving the Program for medical treatment and not returning on June 27. Based on the record before us, and given the flexibility expressly granted to trial courts when determining admissibility of hearsay in community corrections revocation proceedings, we find that the trial court did not abuse its discretion when it found that Poffenbarger's testimony possessed the necessary indicia of reliability to be admissible.[2] Accordingly,

---

[2] We note that, during the hearing, the trial court took judicial notice of "the discovery and its attachment" that the Program had filed prior to the hearing pursuant to the court's discovery order. *Transcript* at 17. The State suggests that Poffenbarger was testifying from the same documents that the Program had filed with the

Counceller has failed to show that the trial court abused its discretion when it permitted Poffenbarger to testify about the events that occurred on June 27.

## II.  Sufficiency of the Evidence

Our standard of review of an appeal from the revocation of a community corrections placement mirrors that for revocation of probation.  *Holmes*, 923 N.E.2d at 483 (quoting *Monroe*, 899 N.E.2d at 691).  A probation hearing is civil in nature and the State need only prove the alleged violations by a preponderance of the evidence.  *Id*.  We will consider all the evidence most favorable to supporting the judgment of the trial court without reweighing that evidence or judging the credibility of the witnesses.  *Id*.  If there is substantial evidence of probative value to support the trial court's conclusion that a defendant has violated any terms of community corrections, we will affirm its decision to revoke placement.  *McQueen v. State*, 862 N.E.2d 1237, 1242 (Ind. Ct. App. 2007).

Counceller argues that the trial court abused its discretion in allowing Poffenbarger to testify from documents of Counceller's file and because "there was no other evidence to support the alleged violation[,]" the evidence was

---

trial court prior to the hearing and of which the trial court took judicial notice, and, therefore, any error in the admission of Poffenbarger's testimony was harmless.  In furtherance of that position, the State filed an Appellee's Appendix containing, among other things:  (1) the Program's June 27, 2019 conduct report; (2) a work release failure to return checklist; and  (3) the probable cause affidavit for Cause F6-1708.  However, we do not know with certainty what documents the Program filed pursuant to the court's discovery order, nor do we know if the documents in Appellee's Appendix were the same documents from which Poffenbarger was testifying.  Because we find Poffenbarger's testimony was properly admitted, we do not reach the State's harmless error argument.

insufficient. *Appellant's Brief* at 10. Having already found that the trial court did not abuse its discretion in admitting Poffenbarger's testimony, we now turn to whether that evidence was sufficient to establish a violation. We find that it was.

[17] Poffenbarger testified that Counceller was assigned to and placed in the work release facility on June 27 pursuant to his conviction for fraud. She stated that Counceller left, that same day, with permission to go to St. Vincent Hospital in Anderson for medical treatment, but he did not return. When asked on cross-examination whether anyone from the Program ever spoke to Counceller to determine whether he might have had a good reason for not returning, Poffenbarger replied, "He didn't return to our facility, so we couldn't have." *Transcript* at 16.

[18] The State presented sufficient evidence for the trial court to find that Counceller violated the terms of the Program.

[19] Judgment affirmed.

Bradford, C.J. and Robb, J., concur.